## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| **ELIZABETH PUTNAM, and CALE PUTNAM**<br><br>    **Plaintiffs,**<br><br>**v.**<br><br>**EPR PROPERTIES, and PREMIER PARKS, LLC**<br><br>    **Defendants.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**Civil No. 4:24-cv-40136-MRG**

### MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS (ECF. NOS. 13, 14)

**GUZMAN, J.**

Pending before the Court are Defendants EPR Properties and Premier Parks, LLC's Motions to Dismiss Plaintiffs' complaint for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2). [ECF Nos. 13, 14]. For the reasons stated herein, the Court **GRANTS** the motions to dismiss.

### I.    BACKGROUND

Plaintiffs allege five counts against Defendants EPR Properties ("EPR") and Premier Parks, LLC, ("Premier Parks") individually for the wrongful death of their son, Anthony Putnam. [Compl. ¶¶ 22–31, ECF No. 1]. On January 12, 2024, Anthony Putnam, who was five years old at the time, was on the premises of Hotel Valcartier when a Murphy bed in one of the hotel's rooms collapsed on him, causing catastrophic head injuries and leading to his death later that night. [Id. ¶ 7]. Plaintiffs claim Premier Parks and EPR were negligent (Counts I–II and VI–VII) and grossly negligent (Counts III–VIII) in causing the death of Anthony Putnam, and that Defendants'

negligence led to loss of consortium (Counts IV–V and IX–X). [Id. ¶¶ 22–31]. Plaintiffs also sue for the use and benefit of the next of kin of the decedent in accordance with Mass. Gen. Laws ch. 229. [Id. ¶¶ 23–24, 28–29]. EPR and Premier Parks filed separate 12(b)(2) motions to dismiss for lack of personal jurisdiction. [ECF Nos. 13, 14].

### A. Procedural History

Plaintiffs filed their complaint on October 31, 2024. [ECF No. 1]. Defendants timely moved to dismiss Plaintiffs' complaint, [ECF Nos. 13, 14], and Plaintiffs opposed their motions, [ECF Nos. 18, 19]. Each Defendant replied to Plaintiffs' opposition. [ECF Nos. 25, 29]. The Court held a hearing on the motions on July 30, 2025. [ECF No. 32].

### B. Jurisdictional Facts

As Defendants challenge the sufficiency of this Court's jurisdiction over them, the Court will begin by stating the relevant jurisdictional facts. At all relevant times, Plaintiffs Elizabeth Putnam and Cale Putnam were Massachusetts residents. [ECF No. 1 ¶¶ 2–3]. They are the mother and father, respectively, of the decedent, Anthony Putnam, and are the duly appointed co-personal representatives of the Estate of Anthony Putnam. [Id. ¶¶ 2–3].

Defendant EPR is a real estate investment trust incorporated in Maryland and headquartered in Kansas City, Missouri. [Id. ¶ 5]. Defendant Premier Parks is a limited liability company incorporated in Delaware and headquartered in Oklahoma City, Oklahoma. [Id. ¶ 4]. Plaintiffs allege that EPR and Premier Parks own, operate, manage, and control Hotel Valcartier, located at 2280 Valcartier Boulevard, Quebec, Canada. [Id. ¶ 6]. Neither EPR nor Premier Parks have consented to this Court's jurisdiction. [ECF Nos. 13, 14].

Plaintiffs allege that EPR and Premier Parks operate the Hotel Valcartier in Québec, Canada together, specifically averring that EPR owns the property and Premier Parks manages it.

[ECF No. 18 at 1; ECF No. 18-1; ECF No. 19-1][1]. In corroboration of this claim, Plaintiffs rely almost exclusively on publicly available websites, press releases, and other internet publications. [See ECF No. 18-1, Exs. 1–13]. For their part, Defendants assert that they do not direct or control any aspect of Hotel Valcartier's operations, and that they do not have sufficient contacts with Massachusetts such that they purposefully availed themselves of the forum state. [Burke Decl., ECF No. 29-1; Cerbo Decl., ECF No. 17-1; Stanion Aff., ECF No. 12-1].

To start, Plaintiffs allege that EPR and Premier Parks bought and operated the Hotel Valcartier in Quebec, Canada, together based on an EPR Properties press release. [ECF No. 18-1, Ex. 1]. Plaintiffs also reference a press release which announced that Calypso-Valcartier Group, the alleged previous owner of Hotel Valcartier, was "welcom[ing] a new property owner—EPR Properties, and new management—Premier Parks, LLC." [ECF No. 18-1, Ex. 2]. Plaintiffs allege that Calypso-Valcartier Group Resort and Water Parks merged with Premier Parks, LLC, pointing to the fact that the Premier Parks' website lists a contact to Hotel Valcartier with a @valcartier.com email address. [ECF No. 18 at 5; ECF No. 18-1, Ex. 2]. Plaintiffs assert that the valcartier.com domain is the same domain Defendants used to solicit and engage with customers, including Plaintiffs. [ECF No. 18 at 5; ECF No. 18-1, Ex. 2].

Plaintiffs further allege that EPR "owns the property and buildings in Quebec" (referring to Hotel Valcartier), citing EPR's SEC Form 10-K filings, which show that EPR earns over $9 million in revenue from a property in Québec. [ECF No. 18-1, Ex. 3]. Though the SEC filings do

---

[1] Plaintiffs filed their exhibits in opposition to each Defendant's motion to dismiss as single omnibus files. For ease of reference, the Court will refer to all of Plaintiffs' exhibits in opposition to Premier Parks' motion to dismiss as ECF No. 18-1 with the given exhibit number, and all of Plaintiffs' exhibits in opposition to EPR's motion to dismiss as ECF No. 19-1 with the given exhibit number. (Ex. "ECF No. 18-1, Ex. 1" refers to Plaintiffs' Exhibit 1 in opposition to Premier Park's motion to dismiss).

not specifically mention Hotel Valcartier or a location for EPR's properties in Quebec, Plaintiffs assert that the filings "presumably refer[] to Valcartier as that is the only property listed on EPR's website in Québec." [ECF No. 19 at 5 n.3; ECF No. 19-1, Ex. 3]. Plaintiffs claim that EPR informed the public and its investors in a press release that it had acquired the hotel and was "leasing these properties to Premier Parks pursuant to a long-term triple net lease." [ECF No. 18-1, Ex. 1]. Additionally, Plaintiffs allege that EPR's website continues to list Hotel Valcartier as part of its portfolio, designates "Premier Parks" as the hotel's operator, and provides a map identifying Hotel Valcartier as an EPR Property. [ECF No. 18-1, Ex. 5].

Plaintiffs claim that EPR earns substantial revenue from property it owns within Massachusetts, as well as from the Commonwealth's citizens, who come to EPR's hotels and "experiential lodging properties," which are intended to attract customers from all over North America. [ECF No. 19 at 5]. They state that EPR lists property in Massachusetts, "presumably Mirbeau Spa and the Cinemark in West Springfield, as 'owned properties' bringing them $1 [million] in annual revenue." [ECF No. 19 at 5; ECF No. 19-1, Exs. 5 & 3]. Plaintiffs allege Hotel Valcartier, on its website, promotes itself as "one of the most popular recreational destinations in North America," and has been featured in multiple U.S. travel publications. [ECF Nos. 19 at 5–6; ECF No. 19-1, Exs.6–8]. Further, Plaintiffs allege that EPR had "direct contacts with the Putnams" through Hotel Valcartier's advertising and travel marketing, which eventually "resulted in the Putnams booking that first night," and "led [Elizabeth Putnam] to extend [her] stay and add experiences, exactly as the marketing materials urged." [ECF No. 19 at 6, 8].

As for Premier Parks, Plaintiffs allege that Premier Parks lists the Hotel Valcartier as part of its portfolio of hotels it operates, and that Premier Parks touts its "hands-on operating philosophy" and its "relentless focus on guest service and safety." [ECF No. 18 at 2; ECF No. 18-

1, Ex. 4]. Plaintiffs allege that cleaning, maintenance, and inspection jobs at Hotel Valcartier were advertised or managed by Premier Parks via a Glassdoor.com jobs post. [ECF No. 18 at 5; ECF No. 18-1, Ex. 8)]. Plaintiffs also reference Premier Parks' alleged LinkedIn page, which states the company employs between "5K – 10K employees," which Plaintiffs assert would average between 350 to over 700 employees per property in Premier Parks' operating portfolio. [ECF No. 18 at 5 n.3]. Plaintiffs use the LinkedIn page to assert that the roles of Premier Park's employees, specifically those relating to potential maintenance and marketing at Hotel Valcartier, should be subject to jurisdictional discovery. [Id.; ECF No. 18-1, Ex. 7].

Plaintiffs also allege that Premier Parks has extensive contacts with Massachusetts. [ECF No. 18 at 6]. They state that the Premier Parks website features the acquisition and revitalization of the Six Flags in Springfield, Massachusetts and the construction of a new waterpark in Agawam, Massachusetts as two of the company's successful projects. [ECF No. 18 at 6; ECF No. 18-1, Exs. 9 & 10]. Plaintiffs also claim that Premier Parks earns substantial revenue from Massachusetts because Massachusetts citizens come to its venues, which are designed to attract customers all over North America, including Hotel Valcartier. [ECF No. 18 at 6]. Plaintiffs repeat their allegations against EPR supra, stating that Premier Parks' advertising and marketing of Hotel Valcartier "led to the Putnams booking and twice extending their stay at the Hotel Valcartier." [ECF No. 18 at 6; ECF No. 19 at 6].

In addition to the exhibits provided by Plaintiffs, Plaintiff Elizabeth Putnam averred by affidavit that she saw numerous advertisements for the Ice Hotel in Québec while in Massachusetts, and that in October 2022, she reached out to the property via email at info@valcartier.com to book a stay at the Ice Hotel. [Putnam Aff., ECF No. 18-1 at 67–70, ¶¶ 4-5]. By April 2023, Ms. Putnam was able to book a room and the receipt from valcartier.com

contained her address in North Grafton, Massachusetts. [Id. ¶ 7; ECF No. 18-1 at 75–77 (Putnam Aff., Ex. B)]. Putnam corresponded directly with "Village Vacances Valcartier" – under the email address "serviceclientele@valcartier.com" – about the type of room and the accommodations she was requesting [Putnam Aff., ECF No. 18-1 at 67–70, ¶¶ 10-11; id. at 79–87 (Putnam Aff., Ex. C)]. Putnam regularly received email mailings from Village Vacances Valcartier, many of which were marketing materials. [Putnam Aff., ECF No. 18-1 at 67-70 ¶ 11; id. at 89–130 (Putnam Aff. Exs. D–G)].

Plaintiffs argue that this evidence is sufficient for a prima facie showing that EPR and Premier Parks are subject to this Court's specific personal jurisdiction. In the alternative, Plaintiffs argue that there should be jurisdictional discovery because of the "large body of publicly available evidence" they submit to show Defendants' ownership and operation of the hotel, as well as the Defendants' contacts with Massachusetts. [ECF No. 19 at 16; ECF No. 18 at 17]. Plaintiffs therefore request that both Defendant EPR and Premier Parks' motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) be denied in their entirety, or alternatively, that a ruling on the motions should be stayed while jurisdictional discovery is conducted.

As stated above, EPR Properties and Premier Parks each contest this court's jurisdiction over them. In its Motion to Dismiss, EPR Properties attached an Affidavit by Bob Stanion, the Director of Asset Management of EPR Properties. [Stanion Aff., ECF No. 12-1]. Stanion asserts that EPR Properties is a real estate investment trust incorporated in Maryland with its principal place of business in Kansas City, Missouri. [Id. ¶ 2]. Stanion asserts that EPR does not own the Hotel Valcartier, is not registered to do business in the Commonwealth of Massachusetts, conducts no business there, and does not own property there. [Id. ¶¶ 4-8]. Stanion testifies that the property on which the Hotel Valcartier sits is owned by Valcartier Property LP, a subsidiary of EPR

6

organized under the laws of Québec, Canada, with a principal place of business also in Québec. [Id. ¶ 11]. He states Valcartier Property, LP entered into a triple-net lease agreement dated June 10, 2022 – of which EPR Properties is not a party – with Village Vacances Valcartier, Inc. [Id. ¶¶ 12-13]. Stanion states that under the lease, Village Vacances Valcartier, Inc. operates Hotel Valcartier and Valcartier Property, LP collects fixed rent in return. [Id. ¶¶ 14-15]. According to Stanion, Valcartier Property LP has no further involvement in the operation, maintenance, or business activities of the Hotel Valcartier. [Id. ¶ 16]. He states that neither EPR nor its subsidiaries direct, coordinate, control, or have any involvement in the marketing or advertising of the hotel in Massachusetts or elsewhere, nor do they solicit business or have direct communications with consumers, including Plaintiffs, regarding Hotel Valcartier. [Id. ¶¶ 17-21].

Premier Parks attached a Declaration by Jessica Cerbo, the Chief Financial Officer of Premier Parks, LLC, in support of its motion to dismiss. [Cerbo Aff., ECF No. 17-1]. Cerbo testifies that Premier Parks is an LLC organized under the laws of the State of Delaware and that its principal place of business is in Oklahoma City, Oklahoma. [Id. ¶ 3]. She also states that Premier Parks operates amusement and water parks in many states, but not in Massachusetts. [Id. ¶ 4]. Further, she claims Premier Parks does not receive service of process, file income taxes, have any employees, maintain offices, register subsidiaries, own or lease any property, maintain a phone number, or otherwise conduct or solicit business in Massachusetts. [Id. ¶ 5]. Cerbo also states that Premier Parks does not advertise in Massachusetts, specifically market their properties to residents there, directly target Massachusetts consumers or contract with its residents, and does not receive direct revenue from any business operations in Massachusetts. [Id. ¶ 6]. She also states that Premier Parks does not engage in travel bookings or directly sell services to consumers, including for Hotel Valcartier. [Id. ¶ 7-8]. Lastly, she asserts that Premier Parks did not solicit, market, or transact the

7

business of Elizabeth Putnam, and did not communicate with her via phone calls or email. [Id. ¶¶ 9-10].

Premier Parks also attached the Declaration of Kieran E. Burke, Chairman, CEO, and Founder of Premier Parks. [Burke Aff., ECF No. 29-1]. Burke states that Premier Parks never owned, operated, or managed Hotel Valcartier. [Id. ¶ 2]. Burke states that Valcartier Property, LP, a Québec Limited Partnership, and its general partner, ValCal EPR GP Inc., a Delaware-incorporated company, acquired Hotel Valcartier on June 2, 2022. [Id. ¶ 3]. Burke further states that Hotel Valcartier is operated and managed by Village Vacances Valcartier, SRI, which is under the parent company CV Operations, LP, a Delaware Limited Partnership. [Id. ¶¶ 4-5]. Burke also testifies, consistent with Cerbo's affidavit, that Premier Parks never operated or managed Hotel Valcartier, and did not solicit, market, or contract for room rentals at Hotel Valcartier. [Id. ¶¶ 6-8]. Lastly, Burke asserts that Premier Parks had no employees working at Hotel Valcartier as of January 12, 2024, claiming that was the sole responsibility of Village Vacances Valcartier, SRI. [Id. ¶ 9].

## II.    LEGAL STANDARDS

Dismissal under 12(b)(2) is appropriate if, when a court's jurisdiction is contested, the plaintiff fails to meet their burden that personal jurisdiction lies in the forum state. See Sawtelle v. Farrell, 70 F.3d 1381, 1387 (1st Cir. 1995). The plaintiff has the "ultimate burden of showing by a preponderance of the evidence that jurisdiction exists." Vapotherm, Inc. v. Santiago, 38 F.4th 252, 257 (1st Cir. 2022) (quoting Adams v. Adams, 601 F.3d 1, 4 (1st Cir. 2010)). "[A] district court 'may choose from among several methods for determining whether the plaintiff has met [their] burden.'" Id. (quoting Adelson v. Hananel, 510 F.3d 43, 48 (1st Cir. 2007)). As the Court makes its determination without first holding an evidentiary hearing, the prima facie standard is

applied. <u>Motus, LLC. v. Cardata Consultants, Inc.</u>, 23 F.4th 115, 121 (1st Cir. 2022). Under the prima facie approach, the court "must accept the plaintiff's (properly documented) evidentiary proffers as true" and construes them in the light most favorable to the plaintiff in determining the adequacy of their jurisdictional claim. <u>Adelson</u>, 510 F.3d at 48 (quoting <u>Foster-Miller, Inc. v. Babcock & Wilcox Can.</u>, 46 F.3d 138, 145 (1st Cir. 1995)). The court will not, however, credit "conclusory allegations or conclusory averments without evidence of specific facts," and plaintiffs may not "rely on unsupported allegations in their pleadings." <u>Blanding v. Fedx Ground Package Sys., Inc.</u>, 722 F. Supp. 3d 12, 15 (D. Mass. 2024) (internal quotations omitted) (quoting <u>Platten v. HG Bermuda Exempted Ltd.</u>, 437 F.3d 118, 134 (1st Cir. 2006)). At this stage, facts brought forth by the defendant "become part of the mix only to the extent that they are uncontradicted." <u>Adelson</u>, 510 F.3d at 48. However, the court may properly consider affidavits proffered by the defendant, as courts can look "beyond the pleadings to examine not only the plaintiff's properly documented evidentiary proffers but also the defendant's undisputed jurisdictional facts." <u>Kuan Chen v. United States Sports Acad., Inc.</u>, 956 F.3d 45, 56 (1st Cir. 2020).

To establish personal jurisdiction over a non-resident defendant for a claim, "the Due Process Clause requires that the defendant must have sufficient minimum contacts with the state, such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." <u>Nandjou v. Marriott Int'l, Inc.</u>, 985 F.3d 135, 148 (1st Cir. 2021) (internal quotation marks omitted) (quoting <u>Adelson</u>, 510 F.3d at 49); <u>Int'l Shoe Co. v. Washington</u>, 326 U.S. 310, 316 (1945). Personal jurisdiction can be general or specific, but the plaintiff must allege sufficient contacts to sustain either theory. <u>See</u> <u>Nandjou</u>, 985 F.3d at 148. In assessing personal jurisdiction over a non-resident defendant, "a federal court exercising diversity jurisdiction is the functional equivalent of a state court sitting in the forum state." <u>Ticketmaster-New York, Inc. v. Alioto</u>, 26

9

F.3d 201, 204 (1st Cir. 1994). Therefore, Plaintiffs must demonstrate that Massachusetts' long-arm statute grants personal jurisdiction and that personal jurisdiction comports with the Due Process Clause of the United States Constitution. See Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 8 (1st Cir. 2009).

General jurisdiction exists "when [a foreign-state corporation's] affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." Blanding, 722 F. Supp. 3d at 15 (alteration in original) (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011)). Here, as Plaintiffs acknowledge, EPR is a real estate investment trust incorporated in Maryland and headquartered in Kansas City, Missouri, and Premier Parks is a limited liability company incorporated in Delaware and headquartered in Oklahoma City, Oklahoma. As there is no evidence of any contacts with Massachusetts so substantial that EPR or Premier Parks could be considered "at home" in Massachusetts, the Court may not exercise general jurisdiction over Defendants. See Blanding, 722 F. Supp. 3d at 15.

Specific jurisdiction may be invoked where "there is a demonstrable nexus between a plaintiff's claims and a defendant's forum-based activities." United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 618 (1st Cir. 2001). Accordingly, "for each claim and each defendant, [Plaintiffs] must make a tripartite showing: that the claim is sufficiently related to the defendant's contacts with Massachusetts, that the defendant's contacts with Massachusetts constitute purposeful availment of the protections and privileges of conducting business in the Commonwealth, and that the exercise of jurisdiction there is reasonable." Nandjou, 985 F.3d at 148 (citing Nowak v. Tak How Invs., Ltd., 94 F.3d 708, 712–13 (1st Cir. 1996)).

There is a longstanding common-law presumption of "corporate separateness" between an incorporated subsidiary and its parent. In re Lupron Mktg. & Sales Pracs. Litig., 245 F. Supp. 2d

280, 291 (D. Mass. 2003) (citing <u>Cannon Mfg. Co. v. Cudahy Packing Co.</u>, 267 U.S. 333, 336 (1925)). Corporate separateness exists when a "separately incorporated subsidiary is institutionally independent of its parent," in these cases, "jurisdiction cannot therefore be asserted over a parent based solely on the conduct of the subsidiary." <u>Id.</u>[2] The presumption yields only to "clear evidence" to the contrary. <u>See</u> <u>Escude Cruz v. Ortho Pharm. Corp.</u>, 619 F.2d 902, 905 (1st. Cir. 1980) ("The mere fact that a subsidiary company does business within a state does not confer jurisdiction over its nonresident parent, even if the parent is the sole owner of the subsidiary.").[3] "Clear evidence" includes "monitoring of the subsidiary's performance, supervision of the subsidiary's finance and capital budget decisions, and articulation of general policies and procedures." <u>United States v. Bestfoods</u>, 524 U.S. 51, 72 (1998).

## III.    DISCUSSION

### A.  EPR

Plaintiffs must proffer prima facie evidence that specific jurisdiction is proper over EPR under both the Massachusetts long-arm statute and the Due Process Clause of the United States Constitution. <u>See</u> <u>Astro-Med, Inc.</u>, 591 F.3d at 8.

#### a.  Massachusetts Long Arm Statute

The Massachusetts Long Arm statute, Mass. Gen. Laws. ch. 223A, § 3(a) provides in relevant part: "[a] court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's . . . transacting any

---

[2] The clear evidence necessary to overcome the presumption of corporate separateness includes the sharing of directors, officers, and employees. <u>United Elec. Workers v. 163 Pleasant St. Corp.</u>, 960 F. 2d 1080, 1083-84 (1st Cir. 1992).

[3] Of course, the act of acquiring the majority of the shares of a corporation and thereby becoming its parent could not confer jurisdiction; otherwise, the presumption of separateness would be swallowed by the condition precedent to becoming the parent corporation.

business in this commonwealth . . . ." For jurisdiction to be proper under § 3(a), "the defendant must have transacted business in Massachusetts, and the plaintiff's claim must have arisen from the transaction of business by the defendant." <u>Tatro v. Manor Care, Inc.</u>, 625 N.E.2d 549, 551 (Mass. 1994). The "'transacting any business' clause [in § 3] has been construed broadly." <u>Id.</u> (alteration in original) (quoting <u>Heins v. Wilhelm Loh Wetzlar Optical Mach. GmbH & Co. KG.</u>, 522 N.E.2d 989, 991 (Mass. 1988)). "[G]enerally the purposeful and successful solicitation of business from residents of the Commonwealth, by a defendant or its agent, will suffice to satisfy this requirement." <u>Tatro</u>, 625 N.E.2d at 551-52.

In <u>Tatro</u>, a Massachusetts plaintiff was injured when she fell in a bathtub at the defendant's California hotel. <u>Id.</u> at 550. Facts developed during discovery demonstrated that the hotel "regularly solicit[ed] business from all over the country[,]" had arrangements with some Massachusetts businesses to host their employees, and had several events for Massachusetts companies. <u>Id.</u> at 550-51. Though those contacts were not directly related to the plaintiff's visit, the Supreme Judicial Court ("SJC") found it was sufficient to confer jurisdiction when coupled with the plaintiff's room reservation. <u>Id.</u> at 554. The <u>Tatro</u> court likened the "arising from" statutory language to a but-for test, stating "[b]ut for the defendant's solicitation of business in Massachusetts, and its agreement to provide the plaintiff with hotel accommodations in Anaheim, California, the plaintiff would not have been injured at the hotel." <u>Id.</u>

Here, Plaintiffs allege that § 3(a) is applicable and supplies a specific bases for jurisdiction over EPR. [ECF No. 19 at 10-11]. Plaintiffs assert that <u>Tatro</u> is factually analogous to this case and that "the accepting of a reservation from a Massachusetts resident, coupled with a broader effort to attract Massachusetts customers, is sufficient to confer personal jurisdiction." [<u>Id.</u> at 11-12]. Further, Plaintiffs allege that EPR has other contacts with Massachusetts in the form of

property, "presumably the Mirbeau Spa and the Cinemark in West Springfield." [Id. at 5 (emphasis added)].

EPR contests that § 3(a) is applicable and states that Plaintiffs cannot offer the affirmative proof necessary to show that EPR "transacted business" in Massachusetts. In support, EPR attached an affidavit by its Asset Management Director, Bob Stanion,[4] wherein Stanion asserted that EPR does not own the Hotel Valcartier, is not registered to do business in Massachusetts, does not conduct business in Massachusetts, owns no property there, and neither owns nor operates either of the two Massachusetts properties (the spa and theater) the Plaintiffs identify in their complaint. [Stanion Aff., ECF No. 12-1 ¶¶ 4-8]. EPR further notes that even if the Mirbeau Spa and Cinemark – which they admit are owned by subsidiaries of EPR – were sufficient to establish that EPR "transacts business" in Massachusetts, these properties "cannot be considered a 'but for' cause," as they have  nothing to do with Plaintiff's cause of action, and, therefore, those alleged contacts are insufficient to satisfy the "arising from" requirement of § 3(a). [ECF No. 12 at 7-8].

Stanion further asserts that a subsidiary of EPR, Valcartier Property LP, owns the property of the Hotel Valcartier, for which they entered into a triple-net lease agreement on June 10, 2022 with Village Vacances Valcartier, Inc. [Stanion Aff., ¶¶ 11-13]. As detailed supra, Stanion asserts that neither EPR nor its subsidiaries were involved in the operations, marketing, solicitation of business, contracting, or direct communication with consumers regarding the Hotel. [Id. ¶¶ 16-23].

Plaintiffs jurisdictional proffer must fail because Plaintiffs cannot demonstrate that their claims "arise[] from [EPR's] . . . transacting any business in this commonwealth." Mass. Gen.

---

[4] The court may properly consider affidavits proffered by EPR, as courts can look "beyond the pleadings to examine not only the plaintiff's properly documented evidentiary proffers but also the defendant's undisputed jurisdictional facts." Kuan Chen, 956 F.3d at 56.

Laws. ch. 223A, § 3(a); see Bennett v. Jack Dennis Whitewater Trips, 925 F. Supp. 889, 894 (D. Mass. 1996) (denying jurisdiction where court could not conclude that "but for" some in-forum actions by defendant, the plaintiff would not have been injured, as there were "no specific contacts between defendant and plaintiffs in Massachusetts"). None of the emails, receipts, or other communications between Plaintiff and Hotel Valcartier mention "EPR" or "EPR Properties," and Elizabeth Putnam's affidavit also never mentions EPR Properties or Premier Parks, referring exclusively to her communications with "Hotel Valcartier," or "the hotel" generally. [See generally, Putnam Aff., ECF No. 18-1]. Further, the names "EPR" and "Premier Parks" do not appear in any form in the exhibits cited by Putnam in her affidavit, which consist of the e-mails and advertisements she received regarding the Ice Hotel. [Id.; ECF No. 18-1, Putnam Aff., Exs. A–G)]. Lastly, Plaintiffs fail to adequately counter Stanion's affidavit. [See ECF No. 19 at 8-9]; Kuan Chen, 956 F.3d at 56 ("[F]acts are not deemed disputed merely because defense counsel, in an unsworn brief or in an argument before a court, challenges them.").

As the Court will not credit "conclusory allegations" or "conclusory averments" without "evidence of specific facts," and plaintiffs may not "rely on unsupported allegations in their pleadings," Blanding, 722 F. Supp. 3d at 15 (quoting Platten, 437 F.3d at 134), the Court finds that specific jurisdiction over Defendant EPR is improper under Mass. Gen. Laws ch. 223A, § 3(a). On that basis alone, Plaintiffs' complaint may be dismissed with regards to Defendant EPR.[5] However,

---

[5] See Bennett, 925 F. Supp. at 894-95 (holding plaintiff failed to satisfy Massachusetts long-arm statute but analyzing due process *arguendo* stating: "Assuming, *arguendo*, that plaintiffs had surmounted the statutory hurdle of the jurisdictional analysis, this Court's exercise of personal jurisdiction over defendant would nevertheless be improper until it also demonstrated that such exercise is constitutionally permissible," making clear that either analysis is sufficient to foreclose the jurisdictional inquiry).

Plaintiffs' allegations are also insufficient under the Due Process Clause of the United States Constitution.

### b.  <u>Due Process</u>

The Due Process Clause requires that to subject a nonresident defendant to jurisdiction within a state the defendant must "have certain minimum contacts with [that state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" <u>Int'l Shoe Co.</u>, 326 U.S. at 316 (quoting <u>Milliken v. Meyer</u>, 311 U.S. 457, 463 (1940)). For specific personal jurisdiction, the constitutional analysis has three distinct prongs: relatedness, purposeful availment, and reasonableness. <u>Phillips v. Prairie Eye Ctr.</u>, 530 F.3d 22, 26 (1st Cir. 2008). As such, Plaintiffs must establish that:

> (1) their claims directly arise out of or relate to the defendant's forum activities; (2) the defendant's forum contacts represent a purposeful availment of the privilege of conducting activities in that forum, thus invoking the benefits and protections of the forum's laws and rendering the defendant's involuntary presence in the forum's courts foreseeable; and (3) the exercise of jurisdiction is reasonable.

<u>Knox v. MetalForming, Inc.</u>, 914 F.3d 685, 690 (1st Cir. 2019). Plaintiffs' failure as to any one of the factors "defenestrates its claim of specific jurisdiction." <u>Motus</u>, 23 F.4th at 122.

### i.  *Relatedness*

To satisfy the relatedness prong, plaintiffs must show "a demonstrable nexus between [their] claims and [EPR's] forum-based activities . . . ." <u>Adelson</u>, 652 F.3d at 81 (quoting <u>Hannon v. Beard</u>, 524 F.3d 275, 280 (1st Cir. 2008)). This is a "flexible, relaxed standard[.]" <u>Pritzker v. Yari</u>, 42 F.3d 53, 61 (1st Cir. 1994). A defendant "need not be physically present in the forum state" to engage in forum-based activities. <u>N. Laminate Sales, Inc. v. Davis</u>, 403 F.3d 14, 25 (1st Cir. 2005). However, "the action must directly arise out of the specific contacts between the defendant and the forum state." <u>Sawtelle</u>, 70 F.3d at 1389. Where, as here, the lawsuit is based in

tort, then the relatedness inquiry "probe[s] the causal nexus between the defendant's contacts and the plaintiff's cause of action." Phillips Exeter Acad.v. Howard Phillips Fund, Inc., 196 F.3d at 289 (internal citations omitted). As articulated by the First Circuit:

> The relatedness requirement is not an open door; it is closely read, and it requires a showing of a material connection. This court steadfastly reject[s] the exercise of personal jurisdiction whenever the connection between the cause of action and the defendant's forum-state contacts seems attenuated and indirect . . . .. A broad 'but-for' argument is generally insufficient. Because 'but for' events can be very remote, . . . due process demands something like a 'proximate cause' nexus.

Negron-Torres v. Verizon Commc'ns, Inc., 478 F.3d 19, 25 (1st. Cir. 2007) (quoting Harlow v. Children's Hosp., 432 F.3d 50, 62 (1st Cir. 2005)).

In Nandjou, the First Circuit considered a similar wrongful death claim where plaintiff's husband and son drowned at a hotel, and plaintiffs in that case similarly argued that the hotel operator's direct marketing campaign was sufficiently related to her husband and son's death to establish personal jurisdiction over defendants. 985 F.3d at 139–40. Defendants in that case countered that their activities were at most a "but-for" cause, but that such contacts were "too attenuated a connection to the tortious conduct alleged to satisfy" the relatedness standard, as it was not a proximate cause. Id. at 149-50. The First Circuit clarified that though in Nowak it stated a "'proximate cause standard better comports with the relatedness inquiry' with respect to tort claims than a pure '"but for" requirement,'" it also specified that "'strict adherence to a proximate cause standard in all circumstances is unnecessarily restrictive' and that 'the first prong of the jurisdictional tripartite test is not as rigid' as the proximate cause inquiry in the tort context.'" Nandjou, 985 F.3d at 149 (quoting Nowak, 94 F.3d at 715). The court in Nowak noted that "where a corporation 'directly targets residents in an ongoing effort to further a business relationship and achieves its purpose, it may not necessarily be unreasonable to subject that corporation to forum jurisdiction when the efforts lead to a tortious result,' . . . even though they may not have

16

proximately caused it." <u>Nandjou</u>, 985 F.3d at 149 (quoting <u>Nowak</u>, 94 F.3d at 715). Ultimately, the Court in <u>Nandjou</u> found that while the hotel in question didn't have the same "extensive course of dealing" with the plaintiffs as the hotel in <u>Nowak</u>, the hotel had still "deliberately [] cultivated business from [the plaintiff] and her family in Massachusetts by sending direct mail to her home in the Commonwealth that promoted the very hotel in which the drownings occurred and that even described that hotel's pool," so as to be sufficiently related to Nandjou's claims to support the exercise of specific jurisdiction over them. <u>Nandjou</u>, 985 F.3d at 150.

      Plaintiffs try to establish personal jurisdiction over EPR by arguing it conducted marketing to Massachusetts residents and solicited Massachusetts residents to stay at Hotel Valcartier. However, as detailed <u>supra</u>, Plaintiffs cannot actually link EPR to the marketing materials Elizabeth Putnam received and thus, Plaintiffs fail to proffer evidence showing that EPR's alleged contacts with the Commonwealth of Massachusetts have *any* relation to their cause of action, even under the <u>Nandjou</u> relatedness standard. <u>See</u> <u>Bennett</u>, 925 F. Supp. at 897; <u>Sawtelle</u>, 70 F.3d at 1389. Neither Elizabeth Putnam's affidavit nor the attached exhibits reference EPR or EPR Properties when referring to the entities she communicated with at Hotel Valcartier. <u>Cf.</u> <u>Nowak</u>, 94 F.3d at 716 (holding in wrongful death case that hotel's forum based activities were sufficiently related to cause of action where hotel solicited customer's business and had "extensive back-and-forth resulting in [plaintiff's] reserving a set of rooms"); <u>Nandjou</u>, 985 F.3d at 150 (affirming defendants' contacts with Massachusetts were sufficiently related to plaintiff's wrongful death claims where the record supported that defendants induced her family to stay by sending direct mail to her home promoting the very hotel where the drownings occurred). Further, Plaintiffs fail to sufficiently address Stanion's affidavit asserting that EPR was not involved in the marketing, solicitation, communication, contracting, or operations of Hotel Valcartier. <u>See</u> <u>Kuan Chen</u>, 956

F.3d at 56. This case, therefore, is unlike <u>Nandjou</u> and <u>Nowak</u> because in those cases there was evidence that the defendants had directly engaged with the plaintiff-consumer, and there was no question as to whether the defendants owned or operated the facility. <u>See, e.g.</u>, <u>Nowak</u>, 94 F.3d 708; <u>Nandjou</u>, 985 F.3d 135.

Here, Plaintiffs fail to allege a causal nexus between EPR and the injury to Anthony Putnam. Accordingly, they cannot meet the relatedness prong of the analysis, and the Court lacks personal jurisdiction over EPR. Plaintiffs cannot establish that EPR controlled or directed the Hotel Valcartier or its marketing efforts to defeat the presumption of corporate separateness. As Plaintiffs have failed to show that the cause of action is sufficiently related to EPR's contacts with the state of Massachusetts, the Court need not address the purposeful availment or reasonableness prongs, as "[a]ll three criteria must be satisfied to establish personal jurisdiction." <u>Ward v. AlphaCore Pharma, LLC</u>, 89 F.4th 203, 210 (1st Cir. 2023); <u>see</u> <u>Cappello v. Rest. Depot, LLC</u>, 89 F.4th 238, 245 (1st Cir. 2023) (holding where plaintiff failed to meet relatedness prong that court did not need to address reasonableness or purposeful availment).

## B. **Premier Parks**

Plaintiffs must proffer prima facie evidence that specific jurisdiction is proper over Premier Parks under both the Massachusetts long-arm statute and the Due Process Clause of the United States Constitution. <u>See</u> <u>Astro-Med, Inc.</u>, 591 F.3d at 8.

Plaintiffs' jurisdictional evidence for Premier Park's alleged contacts with the forum state is largely similar to their evidence regarding EPR. [ECF No. 18, Exs. 1-13]. Plaintiffs claim that Premier Parks operates a "multi-billion dollar, nationwide and continent-wide network of 'attractions, 'destination properties[,]' hotels and 'experiences' – places designed to attract people from Massachusetts and beyond" and that Premier Parks "operates" the Hotel Valcartier. [ECF

No. 18 at 16]. Plaintiffs also allege that Premier Parks "knowingly and voluntarily contracted" with Elizabeth Putnam. [Id.]

Premier Parks counters, stating that it did not transact any business in Massachusetts that gave rise to Plaintiff's claims, did not rent rooms or services to Plaintiffs, did not market the Hotel Valcartier, did not operate or manage the Hotel Valcartier, and did not have any employees working there. [ECF No. 29 at 9; Burke Decl., ECF No. 29-1 ¶¶ 6-9]. These statements were reiterated in the declaration of Kieran E. Burke, the Chairman, CEO, and Founder of Premier Park LLC, as well as the declaration of Jessica Cerbo, the Chief Financial Officer of Premier Parks. [See, e.g., Burke Decl.; Cerbo Decl.].

As with EPR, Plaintiffs fail to establish the Premier Parks owned, operated, or controlled Hotel Valcartier or had any involvement in the marketing activities between the hotel and Elizabeth Putnam. Plaintiffs also fail to sufficiently address Burke and Cerbo's declarations asserting that EPR was not involved in the marketing, solicitation, communication, contracting, or operations of Hotel Valcartier. Further, Plaintiffs fail to proffer evidence showing that Premier Parks alleged contacts with the Commonwealth of Massachusetts have any relation to their cause of action. See Bennett, 925 F. Supp. at 897 (D. Mass. 1996); Sawtelle, 70 F.3d at 1389 (1st Cir. 1995). Elizabeth Putnam's affidavit does not reference or mention Premier Parks in any form when referring to the entities she communicated with at Hotel Valcartier. This absence distinguishes the case from the "extensive back and forth" communications between the plaintiffs and hotel in Nowak. See, 94 F.3d at 716. None of the exhibits relating to Plaintiff's communications with the Hotel, or the marketing and advertising she received, mentions or intimates Premier Parks either. [See generally, ECF No. 18-1].

The only other contacts Plaintiffs allege Premier Parks to have with Massachusetts are the rebranding of Six Flags locations in Springfield and Agawam, Massachusetts prior to 2013, which Burke states was conducted by Premier Parks, Inc., a separate entity from Premier Parks, LLC. [Burke Decl. ¶ 12]. In any event, even if those contacts were determined to be Premier Park LLC's, they have no relation to the cause of action here. Therefore, this evidence is insufficient for Plaintiffs to meet their burden on the relatedness prong.

Accordingly, Plaintiffs fail to meet the relatedness prong of both the long arm statute analysis[6] and the Due Process analysis, and the Court lacks personal jurisdiction over Premier Parks. See Cappello, 89 F.4th at 245.

## IV.    JURISDICTIONAL DISCOVERY

Plaintiffs seek jurisdictional discovery as an alternative to complete dismissal of their claims. [ECF No. 18 at 4; ECF No. 19 at 4]. To be entitled to jurisdictional discovery, a plaintiff must make a "colorable case for the existence of in personam jurisdiction," and must "present facts to the court which show why jurisdiction would be found if discovery were permitted." Negron-Torres v. Verizon Commc'ns, Inc., 478 F.3d 19, 27 (1st Cir. 2007) (quoting Swiss Am. Bank, Ltd., 274 F.3d at 626).

Here, Plaintiffs fail to allege specific facts and relevant contacts necessary to establish personal jurisdiction. Plaintiffs refer to Tatro, 625 N.E.2d 549; Nowak, 94 F.3d 708; Nandjou, 985 F.3d 135; and Sigros v. Walt Disney World Co., 129 F. Supp. 2d 56 (D. Mass. 2001), stating that

---

[6] Plaintiff's inability to show relatedness under the Due Process analysis is determinative, but *arguendo*, Plaintiffs are similarly unable to show that their claims "arise[] from [Premier Park's]. . . transacting any business in this commonwealth." Mass. Gen. Laws. ch. 223A, § 3 (a); see Bennett, 925 F. Supp. at 894 (denying jurisdiction where court could not conclude that "but for" some in-forum actions by defendant, the plaintiff would not have been injured, as there were "no specific contacts between defendant and plaintiffs in Massachusetts.").

in each case, the court found personal jurisdiction over the hotel's owner and operator under analogous circumstances, and that where facts were disputed, the lower court allowed jurisdictional discovery. [ECF No. 18 at 3-4, 16-17; ECF No. 19 at 3-4, 17-18]. However, as explored in-depth <u>supra</u>, these cases are not analogous. Here, Plaintiffs fail to raise sufficient evidence that EPR or Premier Parks had any contact with Plaintiffs or had any involvement in the operation or advertising of Hotel Valcartier. Furthermore, they fail to adequately address the affidavits proffered by Defendants reiterating EPR and Premier Parks' non-involvement in these activities, and, as mentioned <u>supra</u>, such "facts are not deemed disputed merely because . . . counsel, in an unsworn brief or in an argument before a court, challenges them." <u>Kuan Chen</u>, 956 F.3d at 56.

Furthermore, Plaintiffs fail to state why jurisdiction would be found if discovery were permitted, stating simply: "jurisdictional discovery should be allowed to explore the chasm between [Defendants'] very public acknowledgment of [ownership and operation] of the hotel where Anthony Putnam was killed, and its conclusory statements to the contrary submitted to this Court." [ECF No. 18 at 4; ECF No. 19 at 4]. "[F]ailure to allege specific contacts, relevant to establishing personal jurisdiction, in a jurisdictional discovery request can be fatal to that request." <u>Swiss Am. Bank, Ltd.</u>, 274 F.3d at 626-27; <u>see also</u> <u>Motus</u>, 23 F.4th at 128 (affirming lower court's denial of jurisdictional discovery where plaintiff failed "to explain why [it] was appropriate and what relevant information it hoped to glean through such discovery."); <u>Negron-Torres</u>, 478 F.3d 27  (upholding lower court's denial of jurisdictional discovery where plaintiff failed to make a colorable claim for personal jurisdiction). Thus, to allow limited discovery on these facts would amount to an improper "fishing expedition." <u>MacKnight v. Leonard Morse Hosp.</u>, 828 F.2d 48, 52 (1st Cir. 1987).

21

The Court finds Plaintiffs have not met their burden to be entitled to jurisdictional discovery and the motions to dismiss will be granted in full.

**V.     <u>CONCLUSION</u>**

Plaintiffs have failed to meet their burden to show that personal jurisdiction is proper over Defendants EPR or Premier Parks under the Massachusetts Long-Arm Statute and the Due Process Clause of the U.S. Constitution. Plaintiffs likewise fail to meet their burden to show that jurisdictional discovery is warranted. Accordingly, Defendants EPR and Premier Parks' Motions to Dismiss for lack of personal jurisdiction, [ECF No. 13; ECF No. 14], are **<u>GRANTED.</u>**

**SO ORDERED.**

Dated: August 29, 2025

   /s/ Margaret R. Guzman
Margaret R. Guzman
United States District Judge